# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00655-CR

**Ever Guardado, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. 9024188, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Ever Guardado fatally stabbed his uncle, Alfredo Velasquez, in the house they shared with appellant's mother, Juana Guardado, and other family members. A jury found appellant guilty of murder and assessed punishment, enhanced by a previous felony conviction, at seventy years in prison. *See* Tex. Pen. Code Ann. § 19.02 (West 2003).

Juana Guardado witnessed the stabbing and later gave a written statement to the police that was introduced in evidence. She also testified. In his first point of error, appellant contends this evidence raised an issue as to whether he killed Velasquez under the immediate influence of sudden passion arising from an adequate cause, and that the court erred by refusing to submit this issue to the jury at the punishment stage. *See id*. § 19.02(d). He also complains of jury selection error. We will overrule these contentions and affirm the conviction.

Juana Guardado moved to the United States from El Salvador in 1985 with appellant, who was then nine years old, and his sister. Velasquez had recently begun living with them, but it is not clear from the record how long he had been in this county. Appellant and Velasquez worked together as painters. There is evidence that the two men had worked as usual on the day of the stabbing, and that they appeared to be in good spirits, laughing and talking.

Juana Guardado said she arrived home from work at about 6:00 p.m. She went to appellant's bedroom and found him watching television. He was angry and crying. This concerned her because appellant had a bad temper. Appellant told his mother that Velasquez had insulted him as they were coming home from work. Appellant said Velasquez told him that "when he had his beers, he was a man, but without his beers, he wasn't a man." At another point in her testimony, she indicated that Velasquez had told appellant that "if you do not drink, you have no balls." She testified that in El Salvador, Velasquez's insult was "very horrible. It's a very foul word for us." Guardado told appellant that Velasquez "was just teasing him" and to ignore him. She suggested that appellant go outside or take a shower to cool off. As Juana Guardado and appellant sat in his bedroom talking, Velasquez came to the door and said, "Well, now you are telling your mother what happened, aren't you." She said that Velasquez's tone was harsh.

Velasquez continued on through the kitchen and into the garage. Appellant also went to the kitchen, followed by his mother. In her written statement, Juana Guardado said that she saw appellant go to a drawer and open it. She did not see him take anything from the drawer, but she did "see him do something with his pants pocket." Velasquez opened the door from the garage and stood in the doorway. He raised his hands and told appellant, "Go ahead and hit me." Appellant

2

then reached into his pocket, removed a knife, and stabbed Velasquez in the throat. He then bent the knife and left the house. In her trial testimony, Guardado said she did not remember seeing appellant reach in the drawer, seeing the knife in his hand, or seeing him break the knife after the stabbing.

"Sudden passion," within the meaning of section 19.02(d), means "passion directly caused by and arising out of provocation by the individual killed . . . which arises at the time of the offense and is not solely the result of former provocation." *Id*. § 19.02(a)(2). Thus, the victim's provocative conduct must have occurred at the time of the offense. *Marras v. State*, 741 S.W.2d 395, 405 (Tex. Crim. App. 1987). Passion cannot be "sudden" if it is based on earlier events. *Hobson v. State*, 644 S.W.2d 473, 478 (Tex. Crim. App. 1983); *Oliva v. State*, 663 S.W.2d 656, 658 (Tex. App.—Corpus Christi 1983, no pet.). The provocative conduct must have been adequate to "produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Tex. Pen. Code Ann. § 19.02(a)(1). A defendant is entitled to a sudden passion instruction if there is some evidence to support it, even if that evidence is weak, impeached, contradicted, or unbelievable. *Trevino v. State*, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003).

In the trial court, appellant argued that the sudden passion issue was raised by his mother's testimony describing the "horrible" insult that so angered and embarrassed him: his uncle's remark that he was not a man except when he was drinking. Assuming that a jury could have reasonably found this remark to be "adequate cause," it did not justify a sudden passion instruction because it was not made at the time of the offense. Instead, the remark was made as the two men

3

were returning home from work, well before the stabbing. Whatever passion the remark may have aroused in appellant, it was not "sudden passion" when he stabbed Velasquez.

Appellant now presents a more elaborate justification for the requested instruction. He argues that the evidence supports a finding that: (1) he was still in the emotional grip of his uncle's insulting remarks when his mother arrived home; (2) his "rage and resentment" were exacerbated when his uncle "mocked" him for telling his mother about the insult; and (3) when he was "confronted" by Velasquez in the kitchen, the invitation to hit him "could reasonably be interpreted as a provocation." In other words, appellant argues that his uncle's statement in the kitchen was provocative because appellant was still angry about the earlier insult. We believe this rationale, which was not presented to the trial court, is inconsistent with the language of section 19.02.

Even appellant does not contend that Velasquez's remark in the kitchen was one that would commonly produce a degree of anger, rage, or resentment in a person of ordinary temper sufficient to render the mind incapable of cool reflection. Instead, he asks the Court to consider the effect of the remark, not on a person of ordinary temper, but on a person who had spent a substantial period of time brooding over Velasquez's earlier insult. Appellant's argument also overlooks the undisputed fact that he had armed himself with a knife before the final encounter with Velasquez, which clearly suggests that he contemplated killing his uncle before the "provocation" in the kitchen. Viewed in the light most favorable to appellant, the evidence does not raise an issue as to whether appellant was acting under the immediate influence of sudden passion when he stabbed Velasquez. The trial court did not err by refusing to instruct the jury on sudden passion.

4

Even if the court erred by refusing the requested instruction, the error was not calculated to injure appellant's rights and was therefore harmless. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (standards of review for charge error). This is true even if the error was constitutional, and not merely statutory, as appellant argues. *See* Tex. R. App. P. 44.2(a); *see also Jimenez v. State*, 32 S.W.3d 233, 235-37 (reconciling *Almanza* and rule 44.2). Appellant pleaded true to the allegation that he had previously been convicted of a felony. Therefore, the court instructed the jury that the applicable punishment range was fifteen years to life. *See* Tex. Pen. Code Ann. § 12.42(c)(1) (West 2003) (punishment for first-degree felony enhanced by one previous felony conviction). If the court had given a sudden passion instruction, and if the jury had found in appellant's favor on that issue, the range of punishment would have been five years to life. *See id.* § 12.42(b) (punishment for second-degree felony enhanced by one previous felony conviction). We are satisfied beyond a reasonable doubt that the jury's decision to assess seventy years' imprisonment would not have been affected had it been instructed that the minimum punishment was five years instead of fifteen. Point of error one is overruled.

In his second point of error, appellant contends the trial court erred by granting one of the State's challenges for cause during jury selection. Because he did not object when the challenge was granted, appellant did not preserve this contention for review. *Ortiz v. State*, 93 S.W.3d 79, 88 (Tex. Crim. App. 2002). Moreover, he does not contend that the court's ruling denied him a lawfully constituted jury. *See Jones v. State*, 982 S.W.2d 386, 394 (Tex. Crim. App. 1998). Point of error two is overruled.

The judgment of conviction is affirmed.

_____

Mack Kidd, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   September 25, 2003

Do Not Publish

6